UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Roberto Aguilar Delgadillo and Rene Fuentes, individuals, on behalf of themselves and all persons similarly situated | ) ) ) ) ) | Case No. 1:12-cv-00540-JMF |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| J.E.R. Construction, LLC; J's Drywall, Inc.; Jose Flores; Rueben Sanchez; Eligio Baltierra; John Doe | ) ) ) ) | |
| Defendants. | ) ) | |

**MOTION FOR DEFAULT JUDGMENT**

Plaintiffs Roberto Aguilar Delgadillo and Rene Fuentes hereby move for entry of judgment by default against Defendants J's Drywall, Inc. and Jose Flores.

## FACTUAL AND PROCEDURAL HISTORY

On April 6, 2012, Plaintiffs filed their Complaint on behalf of themselves and other similarly situated employees against Defendants J's Drywall, Inc.; JER Construction LLC; Jose Flores; Rueben Sanchez, Eligio Baltierra, and Javier Diaz. Dkt. No. 1. The Complaint alleges that Defendants violated the Fair Labor Standards Act ("FLSA"), the D.C. Minimum Wage Revision Act ("DCMWRA"), the D.C. Wage Payment Act ("DCWPA"), and common law. *Id*. The clerk entered default as to Defendant J's Drywall, Inc. on June 15, 2012, and as to Defendant Jose Flores on July 18, 2012. Dkt. Nos. 6, 19.

On May 2, 2013, the Court certified the action as a representative collective action pursuant to the FLSA and the DCMWRA and defined the collective action to include workers employed by the named defendants between January 1, 2010 and December 31, 2010 who were not paid at their regular hourly rate for regular hours and/or were not paid at a rate of one and one-half times the regular rate of pay for overtime hours. Dkt. No. 48. The Court approved the parties' joint proposed notice of the collective action on May 6, 2013. Notice of the collective action was subsequently sent to the putative collective action members for which potential addresses could be identified. Eleven recipients of the notice returned consent forms seeking to join the collective action, all of which have been filed with the Court.

Following three mediations before Judge John M. Facciola, Plaintiffs and Defendants Sanchez, Baltierra, and Diaz executed a Settlement Agreement on August 12, 2013. Copies of the Settlement Agreement were sent to persons who had opted into the collective action ("Opt-Ins"), each of whom consented to participate in the Settlement and be bound by its terms. The settlement

1

resolves the claims against Defendants Rueben Sanchez, Eligio Baltierra, and Javier Diaz, but not J's Drywall, Inc. or Jose Flores, who remain in default.

## ARGUMENT

### I.     Legal Standard

The Federal Rules of Civil Procedure provide for the entry of a default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for a party seeking default judgment: entry of a default, followed by entry of a default judgment. Fed. R. Civ. P. 55. When a defendant fails to defend against a case or otherwise engages in dilatory tactics, the plaintiff may invoke the court's power to enter a default judgment by first seeking the entry of a default. *See* Fed. R. Civ. P. 55(a); *Peak v. District of Columbia*, 236 F.R.D. 13, 14-15 (D.D.C. 2006). Once the clerk enters the default pursuant to Rule 55(a), Rule 55(b) authorizes either the clerk or the court to enter a default judgment against a defendant.

"[A] court entering default judgment may conduct hearings or make referrals if it needs to determine the amount of damages." *Carazani v. Zegarra*, 2013 U.S. Dist. LEXIS 93752, at *20 (D.D.C. July 3, 2013) (citing Fed. R. Civ. P. 55(b)(2)(B)). "However, a hearing is not necessary if the court can resolve the damages claims 'on the papers alone.'" *Id*.

### II.    Defendants J's Drywall, Inc. and Jose Flores Have Admitted the Factual Allegations in the Complaint

Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint. *See Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001); *see also Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 65 (2d. Cir. 1986) (noting that "default concludes the liability phase of the trial"). Once default judgment is issued, this Court is "required to make an independent determination of the sum to be awarded." *Adkins*, 180 F.Supp 2d at 17; *see also*

*Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 1469 (D.C. Cir. 1999) (stating that the court must conduct an inquiry to ascertain the amount of damages with reasonable certainty).

Therefore, Defendants J's Drywall, Inc. and Jose Flores have admitted all of the well-pleaded allegations in the Complaint. In particular, they have admitted that:

- Plaintiffs and the members of the collective action were employed by Defendants as construction workers, Complaint, ¶¶ 4-5, 14, 19;

- Defendant Flores was responsible for J's Drywall's established pay policies and acted personally as an employer suffering and permitting Plaintiffs and members of the collective action to work, *id.* ¶ 8;

- Defendants JER Construction, J's Drywall, Flores, Sanchez, Baltierra, and Diaz constitute an enterprise that collectively conducts business and employment practices and for which the annual gross volume of business exceeds $500,000, *id.* ¶¶ 12-15;

- Plaintiffs and the members of the collective action are non-exempt workers under the FLSA, *id.* ¶ 17;

- For certain weeks during their employment, Defendants did not pay Plaintiffs and other members of the collective action any wages for the work they performed, *id.* ¶¶ 20, 50;

- When Plaintiffs or other members of the collective action worked more than 40 hours per week, Defendants either did not pay them at all or paid them at their regular rate but failed to pay them one-and-one-half times their regular rate for such hours, *id.* ¶ 22;

- Plaintiffs and the other members of the class entered into employment contracts with Defendants. Defendants breached their contracts with Plaintiffs and the other members of the class by failing to pay the waged Defendants had agreed to pay, *id.* ¶¶ 86-88.

3

The admitted allegations of the Complaint establish violations of the FLSA and common law fraud.[1] Section 6(a) of the FLSA provides that "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at [certain specified] rates[.]" 29 U.S.C. § 206(a). Section 7(a)(1) of the FLSA provides that "no employer shall employ any of his employees who in any workweek is engaged . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Defendants violated these provisions by failing to pay Plaintiffs and members of the collective action any wages for certain hours worked and by failing to pay an overtime premium for hours worked above 40 per week.

In addition, Defendants committed common law breach of contract violations by failing to pay Plaintiffs and members of the collective action at the contracted rates. "To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." *Ruffin v. New Destination, LLC*, 773 F. Supp. 2d 34, 40 (D.D.C. 2011). Each of these elements is established by the allegations in the Complaint. *See* ¶¶ 85-89.

### III. Plaintiffs Have Established Damages with Reasonable Certainty

Where, as here, a defendant "did not maintain proper payroll records pursuant to their obligations under [the FLSA], the Court may approximate damages under the FLSA based on 'just and reasonable' inferences." *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 13 (D.D.C. 2010). "Indeed, when a defendant has not properly maintained employment records, a court will give the

---

[1] Plaintiffs do not seek the entry of judgment as to the claims under the DCMWRA and the DCWPA.

4

plaintiff's estimate of damages a strong presumption of validity, provided that the estimate is reasonably derived from the record." *Id.*; *see also Arias v. U.S. Servs. Indus.*, 80 F.3d 509, 510-12 (D.C. Cir. 1996) (holding that the district court erred by not entering a judgment for the plaintiffs when the plaintiffs' uncontested estimate of damages was not "unduly speculative" and was pieced together from disparate "time cards, sign-in sheets, and payroll documents"); *Dove v. Coupe*, 759 F.2d 167, 174 (D.C. Cir. 1985) (plaintiffs established their damages "from incomplete documentary evidence and their own testimony" which "approximat[ed] an average workweek").

Here, Plaintiffs and the Opt-Ins have provided reasonable estimates of their damages. The Opt-Ins have submitted sworn declarations estimating the duration of their employment, the number of hours they worked in a typical week, their regular rate of pay, and that they were not paid any rate enhancement for overtime hours.[2] From this information, it is possible to determine the damages they are due within a reasonable range of certainty.

Exhibit G to the Kolsky Declaration, filed in support of Plaintiffs' January 24, 2014 Motion to Implement Settlement, summarizes the damage calculations for each Opt-In using information from the Opt-In declarations. For each Opt-In, the total number of overtime hours worked was multiplied times the overtime that was not paid – half of the Opt-Ins regular salary – resulting in the figures under the column marked "FLSA Overtime Unpaid Wages." For the two Opt-Ins who reported uncompensated regular hours, those hours were multiplied by the minimum wage in effect in 2010, which was $7.25 per hour. The "Total FSLA Unpaid Wages" figure was calculated as the sum of the overtime wages due and the regular wages due, if any. This figure was then doubled to account for the FLSA's liquidated damages provision. *See* 29 U.S.C. § 216(b) (employer who violates the FLSA is liable for "the amount of [the employees'] unpaid minimum

---

[2] The Opt-In declarations were filed in support of Plaintiffs' January 24, 2014 Motion to Implement Settlement.

wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages"). As to most of the Opt-Ins, the breach of contract claim added no additional damages. However, for two of the Opt-Ins who reported unpaid regular hours (Palma and Landaverde), the breach of contract claim added additional damages because the unpaid regular hours were compensated at the contracted rate, not merely the minimum wage as under the FLSA.

Plaintiffs Delgadillo and Fuentes provided more detailed information about their hours and pay and, therefore, their damages were calculated slightly differently. *See* Kolsky Decl., Ex. H. Because the paychecks that Plaintiffs received from Defendants did not specify the rate of pay, the number of hours the pay corresponded to, or which hours the pay corresponded to, Plaintiffs' counsel assumed the payments were for regular hours at the contracted rate. This means that the $13,117 in total pay that Plaintiff Delgadillo received from the SBD Defendants was for approximately 820 regular hours of work, leaving 42 regular hours of work and 318 overtime hours uncompensated. The 42 regular hours should be compensated at the 2010 minimum wage ($7.25 per hour) and the 318 overtime hours should be compensated at one-and-a-half times Plaintiff Delgadillo's regular rate, or $24 per hour. Plaintiff Delgadillo is also entitled to an additional $367.50 for his breach of contract claim. This is the number of uncompensated regular hours (42) at the contracted rate ($16 per hour), less the amount paid at the minimum wage under his FLSA claim. Similar calculations were performed for Plaintiff Fuentes. Accordingly, the total damages suffered by Plaintiffs and each of the Opt-Ins are as follows:

6

| Name | Total Damages |
|---|---|
| Carlos Enrique Gonzalez | $11,647.91 |
| Saul Castro Palma | $13,785.99 |
| Jose I. Torres | $1,213.33 |
| Adriano Cummings | $1,169.99 |
| Miguel Vasquez Landaverde | $8,063.00 |
| Dayrell Jones | $1,178.66 |
| Jeffery Junior Jones | $8,704.00 |
| Justin Lee Hunt | $2,240.00 |
| Jose Godoy | $13,760.00 |
| David Brandon Hunt | $7,680.00 |
| Roberto Aguilar Delgadillo | $16,240.50 |
| Rene Fuentes | $11,208.00 |
| **Total:** | **$96,891.38** |

These amounts should be offset by any payments made pursuant to the Settlement Agreement between Plaintiffs and Defendants Rueben Sanchez, Eligio Baltierra, and Javier Diaz (or any other settlement or judgment in the action). Accordingly, the Proposed Default Judgment submitted herewith provides: "The amounts ordered paid in this judgment shall be reduced to the extent that any payments are made to any of the recipients listed above by any other defendant in this action pursuant to any settlement or judgment in this action."

**IV. Defendants J's Drywall, Inc. and Jose Flores Are Liable for Plaintiffs' Attorneys' Fees and Costs**

    **A. Plaintiffs' Counsel Seek Reasonable Attorneys' Fees**

The FLSA provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b); *see also Encinas v. J.J. Drywall Corp.*, 840 F. Supp. 2d 6, 11 (D.D.C. 2012). In contrast to other fee-shifting statutes where the award of attorney's fees and costs is

7

discretionary with the court, an award of attorney's fees to a prevailing plaintiff in a FLSA case is mandatory. *See Hensley v. Eckerhart*, 461 U.S. 424 (1983). Here, the entry of default judgment in Plaintiffs' favor will indicate that Plaintiffs are prevailing parties. *See Bradshaw v. Jefferson Grill, Inc.*, 2012 U.S. Dist. LEXIS 95274, at *2-3 (D.D.C. July 10, 2012) (entry of default judgment "was a clear alteration in the legal relationship between plaintiff and defendant and one which was the result of formal judicial action").

Under the lodestar method, "[t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). The "lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010).

In this matter, Plaintiffs and the collective action have been represented by R. Joseph Barton and Joshua Kolsky of Cohen Milstein Sellers & Toll PLLC and by Barbra Kavanaugh and Justin Zelikovitz of the DC Employment Justice Center ("EJC"). These attorneys have substantial experience in complex civil litigation and/or wage-and-hour law. The total lodestar for Plaintiffs' counsel in this case from the inception of the case until December 31, 2013 is $230,440.25.[3] The breakdown of lodestar for each attorney and other professional is included in Exhibit B to the Declaration of Joshua M. Kolsky in Support of Fee Request ("Kolsky Fee Declaration") and in Exhibit A to the Declaration of Barbra Kavanaugh. Detailed listings of Cohen Milstein's time entries in this matter are included as Exhibit D to the Kolsky Fee Declaration.

---

[3] Plaintiffs' counsel intends to supplement this filing with additional fees incurred since December 31, 2013.

8

Cohen Milstein's lodestar was calculated using their regular billing rates. "An attorney's regular billing rate is presumptively reasonable[.]" *Pleitez v. Carney*, 594 F. Supp. 2d 47, 53 (D.D.C. 2009). Moreover, many courts have approved fee awards using Cohen Milstein's normal billing rates. In *Mills Corp.*, for example, the court approved rates for attorneys from Cohen Milstein that ranged from $440 to $775 for partners and $295 to $525 for associates. *See Mills Corp.*, No. 06-cv-77, Doc. No. 478-15 (E.D. Va. Nov. 12, 2009), *granted*, 265 F.R.D. at 265. The attorney fees requested here are squarely in the middle of those ranges. Many other federal courts have similarly approved Cohen Milstein's rates in recent years. *See, e.g., Parker v. Dish Network, L.L.C.*, No. 4:11-cv-1457, Doc. No. 63 (N.D. Cal. Feb. 13, 2012), *granted*, Doc. No. 87 (Apr. 17, 2012) (approving as reasonable Cohen Milstein's hourly rates ranging from $530 to $710 for partners and $350 for associates); *In re Vonage Mktg. & Sales Practices Litig.*, MDL No. 07-3906, Doc. No. 97-4 (D.N.J. Apr. 11, 2011), *granted*, Doc. No. 109 (May 12, 2011) ($550 to $710 for partners and $230 to $355 for associates at Cohen Milstein).

As a non-profit, the EJC does not have regular billing rates. Therefore, the EJC's lodestar was calculated using rates from the Laffey Matrix, a guide for determining reasonable hourly rates. *See Falica v. Advance Tenant Servs.*, 384 F. Supp. 2d 75, 79 (D.D.C. 2005). "[U]se of the Laffey matrix to determine reasonable hourly rates in FLSA cases is not automatic" but is an "appropriate starting point for determining rates of reimbursing attorneys who bring cases under the FLSA." *Bradshaw*, 2012 U.S. Dist. LEXIS 95274, at *5.

The Court should "assess the reasonableness of the attorney's fee award in light of the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Falica*, 384 F. Supp. 2d at 78-79; *see also Hensley*, 461 U.S. at 430. The twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of

9

employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id*. at 79 n.2.

"When considering the *Johnson* factors, the court need not robotically list each factor nor comment on those factors that do not apply." *Bennett v. CSX Transp., Inc.*, 905 F. Supp. 2d 704, 708 (E.D.N.C. 2012). Plaintiffs address the applicable *Johnson* factors as they relate to this case.

### Time and Labor Expended

The amount of time spent on this case by Plaintiffs' counsel is reasonable given the complex nature of the case, involving hybrid collective action and class action claims, defaulting defendants, and hard-fought settlement negotiations. Moreover, Plaintiffs' counsel used less senior attorneys and paralegals where appropriate in order to reduce fees.

### Novelty and Difficulty of the Questions Raised

This matter involved numerous sophisticated legal and evidentiary issues including: the uncertainty of obtaining FLSA conditional certification given the different entities that employed the collective action members in different work locations, the difficulty of locating collective action members given that contact information was initially unavailable, and the difficulty of proving damages where Defendants retained no records of hours worked. Moreover, even assuming success on the merits, the case presented obstacles to recovering from Defendants. The settling defendants have relatively meager assets, and consequently are not able to fund a large settlement or judgment. And there is no guarantee that Plaintiffs will be able to locate the defaulting defendants or that they will have assets sufficient to satisfy the default judgment.

### Skill Required To Properly Perform the Legal Services Rendered

The skill required to perform the legal services rendered in this case are best reflected by the significant factual and legal hurdles presented. Overcoming these hurdles required specialized knowledge about wage and hour law as well as experience in complex civil litigation. In addition, this case required Plaintiffs' counsel to locate, communicate with, and gather evidence from a transient group of collective action members residing in different states, many of whom do not speak English.

### The Customary Fee/Awards in Similar Cases

Courts have approved hourly rates above those requested here in other FLSA cases. *See, e.g.*, *Asare v. Change Group N.Y., Inc.*, 2013 U.S. Dist. LEXIS 165935, at *49-50 (S.D.N.Y. Nov. 15, 2013) (finding hourly rates of $750 per hour for partners and $500 per hour for senior associates to be reasonable in FLSA case); *Velasco v. Mis Amigos Meat Mkt., Inc.*, 2013 U.S. Dist. LEXIS 152533, at *32 & n.4 (E.D. Cal. Oct. 22, 2013) (approving partner rate of $650 per hour and senior associate rate of $495 per hour in FLSA case). Likewise, in class action litigation generally, rates above those requested here are routinely approved. *See, e.g.*, *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 Civ. 7493, 2013 U.S. Dist. LEXIS 116720 (S.D.N.Y. May 30, 2013) (finding reasonable attorneys' fees based on hourly rates ranging from $750 (partner) to $650 (associate)); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) (finding reasonable hourly rates ranging from $700 to $750 per hour).

### Whether the Fee is Fixed or Contingent

Plaintiffs' counsel undertook their representation of Plaintiffs on a strictly contingent basis, and invested a substantial amount of time and money to prosecute the action with no guarantee of compensation or recovery of costs. If Plaintiffs' counsel failed to secure relief for Plaintiffs and the class, they would receive no compensation for their time nor any reimbursement for their out-

11

of-pocket expenses.  Accordingly, the risk associated with this undertaking supports the requested fee.

### Amount in Controversy and Results Obtained

By obtaining a default judgment, Plaintiffs' counsel will obtain a judgment for the full value of the amount in controversy.  Moreover, Plaintiffs' counsel have already secured a settlement for up to $60,000.00, almost two-thirds of the full amount in controversy.  This factor therefore strongly supports the reasonableness of the requested fee.

### The Experience, Reputation, and Ability of the Attorneys

Plaintiffs' counsel includes practitioners with many years of experience in complex civil litigation and wage and hour law.  Joseph Barton at Cohen Milstein has litigated complex civil lawsuits for approximately thirteen years on behalf of plaintiffs.  Joshua Kolsky at Cohen Milstein has almost eight years of legal experience, including clerkships at federal district and circuit courts, and over four years litigating class actions on behalf of plaintiffs.  Counsel at the EJC involved in this matter include Barbra Kavanaugh, the EJC's Executive Director with decades of experience as a litigator, and Justin Zelikovitz, who has approximately five years of experience in employment law, commercial law, housing law, and bankruptcy matters.

### The Undesirability of the Case

Given the uncertain legal questions in this case, the difficulty in locating collective action members, and the likelihood that the defendants would not be able to fund a substantial settlement or judgment, very few lawyers would be willing to invest the significant time and resources necessary to litigate a case such as this.  Plaintiffs' counsel should be appropriately compensated for representing plaintiffs that might have otherwise been unable to bring their claims.

### Nature and Length of the Professional Relationship Between Attorney And Client

This matter presented the first opportunity for Plaintiffs and counsel to work together, and the undersigned does not foresee a continuing professional relationship with Plaintiffs. Because the nature of this litigation does not generally result in repeat business from clients, courts have held that market rates would ordinarily be higher in such circumstances than in cases where clients can be expected to bring future business to counsel. *See Norman v. Housing Authority of Montgomery*, 836 F.2d 1292 (11th Cir. 1988) ("long-standing relationships with business clients may cause the rates to be depressed" so the rate for plaintiffs' attorney should be set based on cases "where the representation is not the product of an ongoing relationship between the attorney and the client"); *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (same).

Accordingly, the requested attorneys' fees are reasonable and should be approved.

**B.    Plaintiffs' Counsel's Expenses in This Case Were Reasonable**

Plaintiffs' counsel have incurred $5,934.18 in expenses in order to litigate this case on behalf of Plaintiffs and the collective action members. The expenses incurred in this action are reasonable and are for compensable expenses including filing fees, costs of service, postage, online legal research, and long-distance telephone. These expenses are summarized in Exhibit D to the Kolsky Fee Declaration. Each of these costs is reimbursable under the FLSA. *See, e.g.*, *Patel*, 2013 U.S. Dist. LEXIS 130914, at *20-21 (approving reimbursement of costs for filing fee, service of process, postage, and copies). Therefore, the reasonable expenses incurred by Plaintiffs' counsel should be approved.

As with the payments to the Plaintiffs and Opt-Ins, the attorney fees and expenses should be offset by any fees or expenses paid by other defendants in this action.

Finally, Plaintiffs and the Opt-Ins respectfully request that Defendants pay post-judgment interest on the damages, attorneys' fees, and expenses awarded. *See* 28 U.S.C. § 1961.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court enter judgment in favor of Plaintiffs on Counts 1, 2, and 6 as to Defendants J's Drywall, Inc. and Jose Flores and award the amounts requested herein.

Dated: January 24, 2014					Respectfully submitted,


						_____/s/ Joshua M. Kolsky_____
						R. Joseph Barton (DC Bar Number 476510)
						Joshua M. Kolsky (DC Bar Number 993430)
						COHEN MILSTEIN SELLERS & TOLL PLLC
						1100 New York Avenue N.W.
						West Tower, Suite 500
						Washington, D.C.  20005-3964
						Telephone (202) 408-4600
						Facsimile (202) 408-4699
						jbarton@cohenmilstein.com
						jkolsky@cohenmilstein.com

						Laura Brown (DC Bar Number 488292)
						DC EMPLOYMENT JUSTICE CENTER
						1413 K Street NW, 5th Floor
						Washington, DC 20005
						Telephone (202) 645-5524
						Facsimile (202) 828-9190
						lbrown@dcejc.org

						***Counsel for Plaintiffs***

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing has been served by electronic CM/ECF filing on this 24th day of January, 2014.  The CM/ECF system will send notification of the filing to Bryan Veis, Esq. and Joshua Erlich, Esq., counsel for Defendants Rueben Sanchez, Eligio Baltierra, and Javier Diaz.  The remaining defendants are in default and are not entitled to service of this document.  *See* Fed. R. Civ. P. 5(a)(2).

                                                  _____/s/ Joshua M. Kolsky_____
                                                        Joshua M. Kolsky